USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 3/18/2020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ELLEN WOOLFOLK,

                Plaintiff,

v.

NEW YORK CITY DEPARTMENT OF EDUCATION, PAUL CANNON, Principal of P.S. 140X, KEVIN GREEN, Assistant Principal of P.S. 140X, and MALCOLM MCDOWELL, Assistant Principal of P.S. 72X,

                Defendants.

No. 19-CV-3706 (RA)

OPINION & ORDER

RONNIE ABRAMS, United States District Judge:

       Plaintiff Ellen Woolfolk, proceeding *pro se*, filed this action against her employer, the New York City Department of Education, as well as Paul Cannon, the Principal of P.S. 140X, Kevin Green, the Assistant Principal of P.S. 140X, and Malcolm McDowell, the Assistant Principal of P.S. 72X, asserting claims for age discrimination, hostile work environment, and retaliation under the Age Discrimination in Employment Act, New York State Human Rights Law, and New York City Human Rights Law. Defendants move to dismiss the Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and 12(b)(6) for failure to state a claim. For the following reasons, Defendants' motion is granted.

# BACKGROUND[1]

Plaintiff is a 72-year-old woman who is employed by the New York City Department of Education (the "DOE") in its Absent Teacher Reserve ("ATR") program. *See* Compl. ¶¶ 1-2. Plaintiff began working for the DOE in 2001 by teaching elementary school at P.S. 140X in the Bronx, New York. Compl. ¶ 1. Defendant Paul Cannon is the Principal of P.S. 140X and Defendant Kevin Green the Assistant Principal. *See* Compl. at 2-3. Plaintiff alleges that for thirteen years thereafter, she received "consistent satisfactory rating[s]" until she began to "grieve loss preps, lack of resources, and yearly organization sheet." Compl. ¶ 1. She worked at P.S. 140X until approximately 2015. *See* Pl. Opp'n ¶ 15.

Plaintiff alleges that both Cannon and Green took a number of discriminatory and/or retaliatory actions against her between 2012 and 2015. In 2012, Plaintiff allegedly wrote a "whistleblower letter" to Superintendent Tim Behr, explaining the "disconnect" at P.S. 140X. Compl. ¶ 9. Plaintiff appears to assert that Cannon retaliated against her for writing this letter, alleging that he "consulted his inner circle to find out who wrote this revealing letter." *See* SDHR Addendum for Ellen Woolfolk ("SDHR") ¶ 7.[2] During the 2012-2013 year, Cannon allegedly "used [Plaintiff's] students (first grade, 2012-2013) by giving them money to get information." SDHR ¶ 11. During the 2013-2014 year, Green allegedly refused Plaintiff "the IEPs of [her] second grade students."[3] SDHR ¶ 10; *see also* Pl. Opp'n ¶ 7. With respect to these IEPs, Plaintiff alleges in particular that there was a "protracted struggle to get a crisis paraprofessional for one

---

[1] Unless otherwise noted, the following facts are drawn from Plaintiff's amended complaint and exhibits attached thereto, Dkt. 14 ("Compl."), as well as her opposition to the motion to dismiss, Dkt. 30. Plaintiff's allegations are assumed to be true for the purpose of resolving this motion. *See Stadnick v. Vivint Solar, Inc.*, 861 F.3d 31, 35 (2d Cir. 2017); *see also Gill v. Mooney*, 824 F.2d 192, 195 (2d Cir. 1987) (considering the allegations in a *pro se* plaintiff's opposition on a motion to dismiss in addition to those in his complaint).

[2] The "SDHR Addendum for Ellen Woolfolk" is attached to Plaintiff's amended complaint. *See* Compl. at 16-19.

[3] "IEP" stands for "Individualized Education Plan." *See* Defs. Mot., Dkt. 22, at 3.

female student whose IEP mandated one," and that she "witnessed other younger, white teachers receive appropriate paraprofessional assistance." Pl. Opp'n ¶ 7. Plaintiff also asserts that, during the 2013-2014 year, Cannon "removed about 6 students" from Plaintiff's class "without any notification." SDHR ¶ 11. She asserts next that, during the 2014-2015 year, both Cannon and Green "deliberately lied" about the "credentials" of another teacher, Mrs. Oseygue, and "wrote [Plaintiff] up for going to the bathroom, not admitting that [Mrs. Oseygue] was not certified." SDHR ¶ 14. She further alleges that Cannon and Green "did not tell the truth about the credentials" of Mrs. Oseygue "in an effort to trap [Plaintiff] in a situation where [she] would be reprimanded," and that she was ultimately "written up because she went to the bathroom and left Mrs. Oseygue alone with the students." Pl. Opp'n ¶ 9. At some point between 2013 and 2015, Green memorialized his observations of Plaintiff's class, which Cannon allegedly edited "to reflect a more negative observation." Pl. Opp'n ¶ 8; SDHR ¶ 13. In or around March 2015, Cannon "fired [Plaintiff's] special education cohort," who was "also the union chapter leader," which apparently caused Plaintiff to finish the 2014-2015 year "out of compliance." SDHR ¶ 15. Presumably referring to her "special education cohort" and not herself, Plaintiff asserts that the "attacks on [her] special education cohort caused him a lot of health issues." SDHR ¶ 15.

Plaintiff also appears to allege that Cannon and others at P.S. 140X discriminated and retaliated against her by, among other things, denying her resources, training, "per session work," and "grade preferences." Compl. ¶ 10. She alleges further that Cannon "made some of [her] colleagues feel uncomfortable to talk to [her]." Compl. ¶ 10. Specifically, Plaintiff asserts that she was "constantly being written up," "given 'special classes', with six or seven students with behavioral problems," "pressured into ICT classes,"[4] denied "after-school positions" and the

---

[4] "ICT" stands for "Integrated Co-Teaching." See Defs. Mot. at 4.

3

"opportunity to complete [her] Thinking Maps training," and "lost 4 preps a week" even though she is "contractually obligated to give one prep a month" (and that she is "still owed monies from loss preps"). Compl. ¶¶ 5-8.

Plaintiff alleges that Cannon in particular "made snide comments about [her] age" and "retaliated against [her] whenever possible." Compl. ¶ 10; *see also* SDHR ¶ 8 ("Cannon came at me any way possible making snide remarks about my age in meetings, having staff spy . . . ."). For instance, Plaintiff asserts that, at some point, Cannon "made a remark about the grey in [her] hair." Pl. Opp'n ¶ 4. Plaintiff also alleges that, on or around June 8, 2015, Cannon "made comments about [her] age during an APPR grievance meeting with [Plaintiff's] union rep, Andrea Marsh, present."[5] Pl. Opp'n ¶ 10. During that meeting, Cannon allegedly "implied that [Plaintiff's] problems arose because [she] was old." Pl. Opp'n ¶ 10. Plaintiff alleges that, "for the following school year," she was "replaced by a younger, white female who was less qualified because she was uncertified and inexperienced in public schools." Pl. Opp'n ¶ 10; *see also* Pl. Opp'n ¶ 15 (indicating that Plaintiff left P.S. 140X in 2015). Plaintiff asserts further that her "union rep" told her that Cannon was "trying to break" her. Compl. ¶ 7.

In early 2016, Plaintiff was allegedly "forced into the [ATR] pool" by Cannon as a result of "false Section 3020-a disciplinary charges." Compl. ¶ 2; *see also* Compl. ¶ 17 ("I was then placed into the ATR pool after my 3020-a disciplinary settlement in April 2016."). Plaintiff alleges that this placement followed a "three-month period" of "unpaid leave with no medical coverage," which presumably occurred between January and March 2016, Compl. ¶ 2, and that in April 2016, she was "forced into taking an unpaid suspension from [her] position," Compl. ¶ 4. According to Defendants, however, in January 2016, Plaintiff entered into a "stipulation of settlement as a result

---

[5] "APPR" stands for "Annual Professional Performance Rating." *See* Defs. Mot. at 3.

of disciplinary charges preferred against her pursuant to New York Education Law § 3020-a," and as part of the settlement terms, agreed to "be suspended without pay for three months, between January[] and April[] 2016," and to be placed into the ATR pool in April 2016, following her suspension. *See* Defs. Mot. at 5.

Plaintiff appears to allege that since becoming an ATR in April 2016, she has experienced further discrimination based on her age. For instance, she alleges that, since becoming an ATR, she has been "assigned to many schools on a rotational basis, without a permanent assignment, in an inferior status." Compl. ¶ 18. She states that, as an ATR, she has been "denied per session opportunities." Compl. ¶ 22. She also alleges that other ATRs are "generally over 40 years old," are "often filling in for younger teachers," are "unable to obtain permanent positions after sending out numerous resumes and making themselves available on the Open Market," and are "not treated like the teachers [they] cover." Compl. ¶¶ 19-20. According to Plaintiff, ATRs often "do not have access to bathrooms, lockers, information or training." Compl. ¶ 20. Additionally, Plaintiff asserts that her "health emotional and physical has been negatively affected by being an ATR," and that her "reputation as a teacher has been severely affected as an ATR." Pl. Opp'n ¶ 15.

Plaintiff alleges that she received satisfactory ratings for the 2015-2016, 2016-2017, and 2017-2018 school years. *See* Pl. Opp'n ¶ 15. At some point in January or February 2018, however, Plaintiff allegedly received "an unwarranted and unfair U rating on an observation"[6] from Ayo Mendes-Torres, the ATR Field Supervisor at her "field school," P.S. 119. Compl. ¶ 21; Pl. Opp'n ¶ 14.[7] Plaintiff appears to suggest that she received the "U" rating from Mendes-Torres based on

---

[6] "U rating" refers to an "unsatisfactory" rating.

[7] In Plaintiff's amended complaint, she alleges that she received this "U rating" and had this conversation with Mendes-Torres in January 2018. *See* Compl. ¶ 21. In Plaintiff's opposition, however, she states that this occurred on February 27, 2018. *See* Pl. Opp'n ¶ 14.

5

a discriminatory and/or retaliatory motive—similar to the discrimination and retaliation to which Cannon purportedly subjected her. Specifically, Mendes-Torres allegedly told Plaintiff that, after seeing Plaintiff's file and meeting with Cannon, she "knew how to give [her] a 'U' rating." Compl. ¶ 21; *see also* Pl. Opp'n ¶ 14 ("Mendes-Torres told me 'I know how to give you a U,' she learned from Principal Cannon on how to do this."). Plaintiff asserts that Mendes-Torres's statement was a "threat towards [her] employment" because Mendes-Torres "knew that a U rating would adversely impact [Plaintiff's] ability to get a teaching position outside the ATR pool." Pl. Opp'n ¶ 14. According to Plaintiff, a "U rating or observation adversely affects [her] ability to obtain a permanent teaching position or transition out of the ATR program because Principals routinely consider such ratings or observations in their selection process." Pl. Opp'n at 8-9.

At some point after she became an ATR in 2016, Plaintiff began teaching at P.S. 72X in the Bronx, New York, of which Defendant Malcolm McDowell is the Assistant Principal.[8] Pl. Opp'n ¶ 15; Compl. at 4. On May 17, 2019, McDowell observed one of Plaintiff's lessons, and on May 28, 2019, during their "post-observation conference," McDowell allegedly asked Plaintiff "specifically when [she] was going to retire." Compl. ¶¶ 24-25. Plaintiff states that she did not respond to McDowell's question, and that McDowell provided her with recommendations for the lesson he observed, but did not give her any "negative feedback" about the lesson. Compl. ¶ 25. Plaintiff asserts that at the end of May 2019, McDowell's May 17th observation was "deemed unsatisfactory." Pl. Opp'n ¶ 16. She also states that on June 21, 2019, McDowell gave her an observation report, in which "he rated [it] Unsatisfactory." Compl. ¶ 26. Upon Plaintiff expressing that the "observation was unfair," McDowell apparently scheduled another observation for June 25, 2019. Compl. ¶ 26. McDowell then observed Plaintiff's lesson on June 25, 2019. Compl. ¶

---

[8] It is unclear when Plaintiff began teaching at P.S. 72X.

27. On June 26, 2019—the last day of the school year—Plaintiff received the observation report from the June 25th observation, in which she again received an "Unsatisfactory" rating. Compl. ¶ 27. Plaintiff also received an "Unsatisfactory overall rating" for the 2018-2019 school year. Compl. ¶ 28.

Plaintiff asserts that Cannon and Green at P.S. 140X are "in the same district" as McDowell and Marguerita Colon at P.S. 72X, and that Colon is the "lead principal in District 8."[9] Pl. Opp'n ¶ 16. Plaintiff alleges that since she filed this action in April 2019, she has been "subject to blatant acts of additional age discrimination and retaliation by Defendants." Compl. ¶ 23. She also states generally that she "believe[s]" she is "being further discriminated and retaliated against since filing [her] federal complaint for discrimination based on Age as an ATR." Compl. ¶ 29.

## PROCEDURAL HISTORY

On August 8, 2018, Plaintiff filed a charge with the New York State Division of Human Rights ("NYSDHR"). *See* Compl. at 7, 13-19. On February 19, 2019, following an investigation, the NYSDHR issued its Determination and Order, concluding that Plaintiff had failed to establish a prima facie case of unlawful discrimination and that a determination of "no probable cause" was warranted. *See* Bi Decl., Dkt. 21, at Ex. A. On March 21, 2019, the Equal Employment Opportunity Commission ("EEOC") adopted the findings of the NYSDHR and issued Plaintiff a Notice of Right to Sue. *See* Compl. at 7; Bi. Decl. at Ex. B.

Plaintiff filed this action on April 25, 2019, alleging claims against the DOE, Cannon, and Green for age discrimination, hostile work environment, and retaliation in violation of the Age Discrimination in Employment Act ("ADEA"), New York State Human Rights Law ("NYSHRL"), and New York City Human Rights Law ("NYCHRL"). *See* Dkt. 1. On July 2, 2019, Plaintiff filed

---

[9] Colon is the Principal of P.S. 72X, *see* Pl. Opp'n ¶ 16, and is not a defendant in this action.

an amended complaint, naming McDowell as an additional defendant and adding factual allegations, particularly with respect to the May and June 2019 events described above. Dkt. 14. On August 19, 2019, Defendants moved to dismiss pursuant to Rules 12(b)(1) and 12(b)(6). Dkt. 20. Plaintiff filed an opposition on October 16, 2019, Dkt. 30, and Defendants filed a reply on November 26, 2019, Dkt. 34.

## STANDARD OF REVIEW

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000); *see* Fed. R. Civ. P. 12(b)(1). To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). On a motion to dismiss, the Court must "accept[] all factual allegations as true, but 'giv[e] no effect to legal conclusions couched as factual allegations.'" *Stadnick v. Vivint Solar, Inc.*, 861 F.3d 31, 35 (2d Cir. 2017) (quoting *Starr v. Sony BMG Music Entm't*, 592 F.3d 314, 321 (2d Cir. 2010)). At the pleading stage in the discrimination context, "a plaintiff must plead 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 86 (2d Cir. 2015) (quoting *Iqbal*, 556 U.S. at 678). "While 'detailed factual allegations' are not required, 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

In addition, courts must "liberally construe pleadings and briefs submitted by *pro se*

litigants, reading such submissions to raise the strongest arguments they suggest." *McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 156 (2d Cir. 2017) (quoting *Bertin v. United States*, 478 F.3d 489, 491 (2d Cir. 2007)). But even *pro se* litigants must "state a claim to relief that is plausible on its face." *Mancuso v. Hynes*, 379 F. App'x 60, 61 (2d Cir. 2010) (citations omitted). Moreover, "jurisdictional requirements are not relaxed based on a litigant's *pro se* status." *Chakraborty v. Soto*, No. 16 Civ. 9128 (KPF), 2017 WL 5157616, at *6 (S.D.N.Y. Nov. 6, 2017) (citation omitted). Ultimately, "[a] plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Makarova*, 201 F.3d at 113. Thus, "[d]espite the lenient standards with which courts review *pro se* complaints, *pro se* plaintiffs must establish subject matter jurisdiction." *Smith v. Sch. of Visual Arts*, No. 15-CV-8049 (RA), 2016 WL 3440553, at *2 (S.D.N.Y. June 9, 2016) (quoting *Levi v. RSM McGladrey, Inc.*, No. 12-CV-8787 (ER), 2014 WL 4809942, at *3 (S.D.N.Y. Sept. 24, 2014)).

## DISCUSSION

### I. ADEA Claims

#### A. No Individual Liability

As a preliminary matter, individuals cannot be held liable under the ADEA. *See Guerra v. Jones*, 421 F. App'x 15, 17 (2d Cir. 2011); *Scalercio-Isenberg v. Morgan Stanley Servs. Grp. Inc.*, No. 19-CV-6034 (JPO), 2019 WL 6916099, at *7 (S.D.N.Y. Dec. 19, 2019). Plaintiff's ADEA claims are therefore dismissed as against Cannon, Green, and McDowell.

#### B. Timeliness

"A plaintiff seeking to recover under the ADEA must file a discrimination charge with a state agency within 300 days of the occurrence of the allegedly unlawful employment practice." *Boonmalert v. City of New York*, 721 F. App'x 29, 31 (2d Cir. 2018) (quoting *Kassner v. 2nd Ave.*

9

*Delicatessen, Inc.*, 496 F.3d 229, 237 (2d Cir. 2007)); *see also Haghpassand v. Reuters Am. Inc.*, 120 F. App'x 859, 861 (2d Cir. 2005) ("ADEA plaintiffs who file a discrimination charge with a state agency must do so within 300 days after the allegedly unlawful employment practice."); *Dimitracopoulos v. City of New York*, 26 F. Supp. 3d 200, 210 (E.D.N.Y. 2014) ("The statute of limitations under the ADEA is 300 days from the occurrence of the alleged unlawful activity, regardless of when it is filed with the state's human rights administrative agency.") (citation omitted). Plaintiff filed a charge with the NYSDHR on August 8, 2018, and the instant action was commenced on April 25, 2019. Accordingly, any discrete discriminatory or retaliatory actions that occurred prior to October 12, 2017—i.e., 300 days before August 8, 2018—are barred by the ADEA's 300-day statute of limitations. *See Boonmalert*, 721 F. App'x at 31; *Dimitracopoulos*, 26 F. Supp. 3d at 210.

Any alleged discrimination and retaliation that occurred at P.S. 140X—a school at which, according to her complaint, Plaintiff last taught in 2015, *see* Pl. Opp'n ¶ 15—is therefore time-barred for purposes of Plaintiff's ADEA claims. In other words, even construing Plaintiff's allegations liberally, the alleged discrimination and retaliation involving Cannon and Green—the Principal and Assistant Principal of P.S. 140X—are time-barred under the ADEA. As a result, the only timely claims that Plaintiff asserts under the ADEA are related to the "unsatisfactory rating" she received from Mendes-Torres in January or February 2018, the two "unsatisfactory ratings" she received at P.S. 72X from McDowell in May and June 2019, and the "Unsatisfactory overall rating" she received for the 2018-2019 school year, presumably also from P.S. 72X. *See* Compl. ¶¶ 21, 24-28; Pl. Opp'n ¶¶ 14, 16.[10]

---

[10] To the extent Plaintiff asserts that any discriminatory or retaliatory acts that occurred before October 12, 2017 are not untimely pursuant to the continuing violations doctrine, *see* Pl. Opp'n at 9-10 (arguing that "events occurring prior to October 2017 . . . provide further support that the timely adverse employment actions complained of were motivated,

10

## C. Age Discrimination

To state a claim for age discrimination at the motion to dismiss stage, a plaintiff must plausibly allege that (1) she "was within the protected age group"; (2) she "was qualified for the position"; (3) she "experienced [an] adverse employment action"; and (4) "such action occurred under circumstances giving rise to an inference of discrimination." *Gorzysnki v. JetBlue Airways Corp.*, 596 F.3d 93, 107 (2d Cir. 2010). Additionally, "[t]o survive a Rule 12(b)(6) motion to dismiss, a plaintiff asserting an employment discrimination complaint under the ADEA must plausibly allege that . . . her age was the 'but-for' cause of the adverse action." *Marcus v. Leviton Mfg. Co.*, 661 F. App'x 29, 31-32 (2d Cir. 2016) (citing *Vega*, 801 F.3d at 87); *see also MacAlister v. Millenium Hotels & Resorts*, No. 17 Civ. 6189 (ER), 2018 WL 5886440, at *5 (S.D.N.Y. Nov. 8, 2018) ("[I]n determining whether a particular factor was a but-for cause of a given event, we begin by assuming that that factor was present at the time of the event, and then ask whether, even if that factor had been absent, the event nevertheless would have transpired in the same way.") (quoting *Price Waterhouse v. Hopkins*, 490 U.S. 228, 250 (1989)). Accordingly, "an ADEA complaint must contain sufficient facts to make plausible the conclusion that 'but for' [her] age,"

---

and caused, by a discriminatory intent to prevent older teachers from escaping the ATR pool"), that argument fails. "The continuing violation doctrine provides that when a plaintiff experiences a continuous practice and policy that violates his or her rights, the commencement of the statute of limitations period may be delayed until the last violation." *Zoulas v. N.Y.C. Dep't of Educ.*, 400 F. Supp. 3d 25, 49 (S.D.N.Y. 2019) (internal quotation marks, alterations, and citation omitted). As a general matter, "the continuing violation doctrine 'is heavily disfavored in the Second Circuit' and courts have been 'loath' to apply it absent a showing of 'compelling circumstances.'" *Trinidad v. N.Y.C. Dep't of Corr.*, 423 F. Supp. 2d 151, 165 n.11 (S.D.N.Y. 2006) (citation omitted). "To qualify as continuing, the claimed actions must not be 'discrete acts,' but 'repeated conduct' that 'occurs over a series of days or perhaps years.'" *Zoulas*, 400 F. Supp. 3d at 49 (citation omitted). "Examples of discrete acts, for the purposes of the continuing violation doctrine, include disparate disciplining, negative performance reviews, termination, failure to promote, and denial of a preferred job position." *Id.* at 50 (collecting cases). Thus, "[m]ultiple incidents of discrimination, even similar ones, that are not the result of a discriminatory policy or mechanism do not amount to a continuing violation." *Affrunti v. Long Island Univ.*, 136 F. App'x 402, 404 (2d Cir. 2005) (citation omitted). Plaintiff has failed to establish that any alleged discrimination or retaliation that occurred prior to October 2017, including at P.S. 140X, was part of any "discriminatory policy or mechanism." Plaintiff's claims premised on actions prior to October 12, 2017 are therefore time-barred.

11

Plaintiff would not have suffered the adverse employment action. *See Payne v. Malemathew*, No. 09-CV-1634 (CS), 2011 WL 3043920, at *2 (S.D.N.Y. July 22, 2011) (citations omitted).

Here, Plaintiff fails to sufficiently plead that she has suffered an adverse employment action. "A plaintiff sustains an adverse employment action if he or she endures a materially adverse change in the terms and conditions of employment. To be materially adverse a change in working conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities." *Boonmalert*, 721 F. App'x at 32 (quoting *Kassner*, 496 F.3d at 238). Examples of adverse employment actions include "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation." *Johnson v. Morrison & Foerster LLP*, No. 14-CV-428 (JMF), 2015 WL 845723, at *4 (S.D.N.Y. Feb. 26, 2015) (citation omitted).

Construing Plaintiff's allegations liberally, she asserts the following timely adverse actions: (1) receiving an "unsatisfactory rating" from Mendes-Torres, an ATR Field Supervisor, in January or February 2018; (2) receiving two "unsatisfactory ratings" from McDowell in May and June 2019; and (3) receiving an overall "unsatisfactory rating" for the 2018-2019 school year. As an initial matter, however, "a negative performance review, without more, does not represent an adverse employment action." *Chung v. City Univ. of N.Y.*, 605 F. App'x 20, 22 (2d Cir. 2015). Rather, "[n]egative evaluations can be adverse employment actions only if they give rise to material adverse changes in work conditions." *Borzon v. Green*, No. 16-CV-7385 (VEC), 2018 WL 3212419, at *8 (S.D.N.Y. June 29, 2018) (quoting *Kpaka v. City Univ. of N.Y.*, No. 14-CV-6021 (RA), 2016 WL 4154891, at *7 (S.D.N.Y. Aug. 2, 2016)).

Plaintiff fails to allege that she suffered any material adverse changes in her work

conditions as a result of any of the "unsatisfactory" ratings. She has not alleged, for instance, that she was terminated or demoted, that she received a decrease in her salary or a less distinguished title, or that she suffered a material loss of any benefits or responsibilities. *See Johnson*, 2015 WL 845723, at *4. Although she asserts that a "U rating or observation adversely affects [her] ability to obtain a permanent teaching position or transition out of the ATR program because Principals routinely consider such ratings or observations in their selection process," Pl. Opp'n at 8-9, Plaintiff nonetheless remains employed by the DOE and has not experienced any material change in her employment conditions—such as a salary decrease, title change, or reduction in benefits or responsibilities—as required to state a claim. In other words, despite alleging that she received several negative reviews, she has failed to allege that she has endured any "materially adverse change in the terms and conditions of [her] employment." *Boonmalert*, 721 F. App'x at 32.

Similarly, Plaintiff alleges that she stopped receiving certain "interview offers" from other principals in the district after she received the 2019 "U rating." Pl. Opp'n at 9. But she has nevertheless failed to allege that the negative ratings have led to "any immediate tangible harm or consequences." *Valentine v. Standard & Poor's*, 50 F. Supp. 2d 262, 284 (S.D.N.Y. 1999). These actions thus do not constitute "adverse actions materially altering the conditions of [her] employment." *Id.*; *see also, e.g.*, *Herling v. N.Y.C. Dep't of Educ.*, No. 13-cv-5287, 2014 WL 1621966, at *7 (E.D.N.Y. Apr. 23, 2014) ("[T]he theoretical repercussions that [plaintiff] lists from receiving the 'U' rating for 2009–2010—that he was 'scheduled' to lose his position during the school transformation and that he may have difficulty finding employment in other school districts—do not constitute adverse employment actions."); *Malone v. N.Y. Pressman's Union No. 2*, No. 07 Civ. 9583 (LTS) (GWG), 2011 WL 2150551, at *7 (S.D.N.Y. May 31, 2011) ("The elimination of speculative, potential future opportunities is insufficient to establish an adverse

employment action."). In short, Plaintiff's allegations about not receiving certain interview offers for future employment are too speculative to constitute an adverse employment action.

Plaintiff's argument that the unsatisfactory ratings are adverse employment actions because "DOE regulations require that [Plaintiff] receive 3 consecutive 'U' ratings before [she] can be terminated," and therefore, a single unsatisfactory rating constitutes "one-third of the paperwork required to terminated [her]," Pl. Opp'n at 10, is likewise too speculative to support her claim. *See Le v. N.Y. State, Office of State Comptroller*, No. 16-CV-1517, 2017 WL 3084414, at *7 (N.D.N.Y. July 18, 2017) (assertion that "official reprimand" would affect plaintiff's "future advancement and development" is "entirely speculative and cannot suffice as an adverse employment action"). Because Plaintiff does not plausibly allege any adverse employment action, her age discrimination claim must be dismissed.[11]

**D. Retaliation**

To state a claim for retaliation under the ADEA, a plaintiff must plausibly allege (1) "participation in a protected activity known to the defendant," (2) "an employment action disadvantaging the plaintiff," and (3) "a causal connection between the protected activity and the adverse employment action." *Boonmalert*, 721 F. App'x at 33 (quoting *Feingold v. New York*, 366 F.3d 138, 156 (2d Cir. 2004)). Plaintiff adequately pleads that she participated in two protected activities—filing the SDHR complaint in August 2018 and filing the instant lawsuit in April 2019. She does not, however, plausibly allege any causal connection between her protected activities and

---

[11] Additionally, neither Plaintiff's status in the ATR pool nor any alleged discussions about her retirement constitute adverse employment actions for purposes of Plaintiff's age discrimination claim. *See Boonmalert*, 721 F. App'x at 32 (finding that "discussions about retirement, which are a normal part of workplace dialogue between a supervisor and subordinate" do not constitute an adverse employment action); *Lam v. N.Y.C. Dep't of Educ.,* No. 18 Civ. 2756 (PGG), 2019 WL 2327655, at *11 (S.D.N.Y. May 30, 2019) ("The mere placement of Plaintiff in the ATR does not constitute an adverse employment action for purposes of a discrimination or retaliation claim.") (quoting *Torres v. N.Y.C. Dep't of Educ.*, No. 18 Civ. 2156 (NGG), 2019 WL 2124891, at *7 (E.D.N.Y. May 15, 2019)).

any adverse employment actions.

First, the SDHR complaint was apparently brought based on actions by Cannon and Mendes-Torres. *See* Compl. at 13. In it, Plaintiff complained largely of alleged discrimination and retaliation that she sustained at P.S. 140X. *See* Compl. at 16-19. There are no allegations, however, of any alleged adverse employment actions that either Cannon or Mendes-Torres took after the SDHR complaint was filed in August 2018. The one allegation involving Mendes-Torres occurred in January or February 2018. *See* Compl. ¶ 21. And Plaintiff's interactions with Cannon seemed to have ceased once she left P.S. 140X in approximately 2015. *See* Pl. Opp'n ¶ 15. There is also no allegation that McDowell, the only individual alleged to have taken any adverse employment actions *after* the SDHR complaint was filed, or anyone else at P.S. 72X ever knew about the SDHR complaint. Plaintiff's retaliation claim based on the SDHR complaint thus fails. *See Watkins v. First Student, Inc.*, No. 17-CV-1519 (CS), 2018 WL 1135480, at *15 (S.D.N.Y. Feb. 28, 2018) (dismissing plaintiff's retaliation claim where he "fail[ed] to allege that Defendant knew of her EEOC complaint, and if so, when"); *Belizaire v. RAV Investigative & Sec. Servs. Ltd.*, 61 F. Supp. 3d 336, 351-52 (S.D.N.Y. 2014) ("To constitute protected activity, the plaintiff's conduct must have put the employer on notice that the plaintiff believed that discrimination was occurring.") (internal quotation marks and citation omitted).

Plaintiff's retaliation claim based on filing the instant lawsuit also fails. Although Plaintiff filed this action in April 2019, she did not name McDowell as a defendant until July 2019—over one month *after* he engaged in any alleged adverse employment actions. Again, there is no allegation that McDowell or anyone else at P.S. 72X knew about Plaintiff's lawsuit prior to July 2, 2019. Accordingly, Plaintiff's retaliation claim is dismissed. *See Tsismentzoglou v. Milos Estiatorio Inc.*, No. 18-CV-9664 (RA), 2019 WL 2287902, at *5 (S.D.N.Y. May 29, 2019).

### E. Hostile Work Environment

To state a claim for hostile work environment, a plaintiff must plausibly allege that "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Boonmalert*, 721 F. App'x at 33 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). "This standard has both objective and subjective components: the conduct complained of must be severe or pervasive enough that a reasonable person would find it hostile or abusive, and the victim must subjectively perceive the work environment to be abusive." *Id.* (quoting *Littlejohn v. City of New York*, 795 F.3d 297, 321 (2d Cir. 2015)). "To determine whether an incident or series of incidents is 'sufficiently severe or pervasive to alter the conditions' of a plaintiff's work environment, we 'must consider the totality of the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Id.* (quoting *Littlejohn*, 795 F.3d at 320-21).

The only timely allegation in Plaintiff's complaint that could support her hostile work environment claim is the assertion that McDowell specifically asked Plaintiff when she was going to retire. *See* Compl. ¶ 25. This single comment, however, is insufficient to state a hostile work environment claim. *See Boonmalert v. City of New York*, No. 16 Civ. 4171 (KMW) (KNF), 2017 WL 1378274, at *6 (S.D.N.Y. Apr. 12, 2017), *aff'd,* 721 F. App'x 29 (2d Cir. 2018) ("[C]omments or questions about retirement, without more, do not create a hostile work environment.") (quoting *Wu v. Metro-N. Commuter R.R. Co.*, No. 14 Civ. 7015 (LTS) (FM), 2016 WL 5793971, at *17 (S.D.N.Y. Aug. 4, 2016)); *see also Hamilton v. Mount Sinai Hosp.*, 528 F. Supp. 2d 431, 447 (S.D.N.Y. 2007) ("[D]iscussion of retirement is common in offices, even between supervisors and

16

employees, and is typically unrelated to age discrimination."). In short, Plaintiff makes no allegation of any conduct "so severe or pervasive that a reasonable person would find it hostile or abusive." *Boonmalert*, 721 F. App'x at 33-34. Her hostile work environment claim must therefore be dismissed.

## II. NYSHRL and NYCHRL Claims

### A. Election of Remedies

Defendants argue that the doctrine of the election of remedies bars Plaintiff from maintaining her NYSHRL and NYCHRL claims against the DOE, Cannon, and Green. *See* Defs. Mot. at 2. The Court agrees.

Both the NYSHRL and the NYCHRL provide that a plaintiff who files a complaint with the NYSDHR thereby waives the right to bring a related action in court. *See* N.Y. Exec. Law § 279(9); N.Y.C. Admin. Code § 8-502(a). "The election of remedies bar is jurisdictional, such that claims dismissed pursuant to it must be dismissed under Fed. R. Civ. P. 12(b)(1) rather than Rule 12(b)(6)." *Garcia v. N.Y.C. Health & Hosps. Corp.*, No. 19 Civ. 997 (PAE), 2019 WL 6878729, at *16 (S.D.N.Y. Dec. 17, 2019) (citing *Moodie v. Fed. Reserve Bank*, 58 F.3d 879, 882 (2d Cir. 1995)); *see also Marecheau v. Equal Emp't Practices Comm'n*, No. 13-CV-2440 (VEC), 2014 WL 5026142, at *4 (S.D.N.Y. Sept. 30, 2014) ("[A] complaint that has previously been dismissed by the NYSDHR or [New York City Commission on Human Rights ('NYCCHR')] must be dismissed for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1)."). "Thus, both the NYSHRL and the NYCHRL require dismissal of a suit in court if the complainant lodges a complaint with *either* the [NYSDHR] or the [NYCCHR]. This bar applies in federal as well as state court." *Higgins v. NYP Holdings, Inc.*, 836 F. Supp. 2d 182, 187 (S.D.N.Y. 2011) (citing *York v. Ass'n of the Bar of the City of N.Y.*, 286 F.3d 122, 127 (2d Cir.

17

2002)). Moreover, the election of remedies doctrine "also precludes consideration of any claim—whether brought under the NYSHRL or the NYCHRL—arising out of the same incident on which [the plaintiff's NYSDHR] complaint was based." *Id.* at 188. Because Plaintiff's claims in the instant lawsuit—as against the DOE, Cannon, and Green—are based on the same "operative events" as her NYSDHR complaint, the Court lacks subject matter jurisdiction to hear those claims. *See Chakraborty*, 2017 WL 5157616, at *8; *Marecheau*, 2014 WL 5026142, at *4. These claims are therefore dismissed.

### B. Remaining NYSHRL and NYCHRL Claims

Courts have wide discretion to decline to exercise supplemental jurisdiction over state law claims once all federal claims in a case have been dismissed. *See Lopez v. N.Y.C. Dep't of Educ.*, No. 17-CV-9205 (RA), 2019 WL 2647994, at *5 (S.D.N.Y. June 26, 2019); *see also Harris v. NYU Langone Med. Ctr.*, No. 12 Civ. 0454 (RA), 2014 WL 941821, at *2 (S.D.N.Y. Mar. 11, 2014) ("[C]ourts regularly decline jurisdiction over NYSHRL and NYCHRL claims once the federal employment claims have been dismissed."). Because the Court has dismissed Plaintiff's federal claims, and has concluded that her claims under the NYSHRL and NYCHRL as against the DOE, Cannon, and Green are barred by the election of remedies doctrine, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining NYSHRL and NYCHRL claims as against McDowell. *See Garcia*, 2019 WL 6878729, at *17 (finding that the election of remedies doctrine "precludes the majority," but not all, of plaintiff's NYCHRL claims, and declining to exercise supplemental jurisdiction over plaintiff's "remaining NYCHRL claims"); *McDonald v. City of New York*, 786 F. Supp. 2d 588, 616 (E.D.N.Y. 2011) (dismissing plaintiff's NYSHRL claims under the election of remedies doctrine and declining to exercise supplemental jurisdiction over plaintiff's remaining NYCHRL claims). The Court dismisses Plaintiff's NYSHRL and

18

NYCHRL claims as to McDowell without prejudice.

## CONCLUSION

For the foregoing reasons, the Court dismisses Plaintiff's claims under the ADEA, as well as her claims under the NYSHRL and the NYCHRL as to Defendants DOE, Cannon, and Green, with prejudice. The Court declines to exercise supplemental jurisdiction over Plaintiff's claims under the NYSHRL or the NYCHRL as to Defendant McDowell.

The Clerk of Court is respectfully directed to terminate the motion pending at Dkt. 20, mail a copy of this Order to Plaintiff, and close this case.

SO ORDERED.

Dated:     March 18, 2020
            New York, New York

                                             Ronnie Abrams
                                             United States District Judge